**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
Nadir O. Ahmed (SBN: 290810)
nadir@kazlg.com
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

**MADAR LAW CORPORATION**
Alex S. Madar, Esq. (SBN: 319745)
alex@madarlaw.net
11510 Eaglesview Ct.
San Diego, CA 92127
Telephone: (858) 299-5879
Facsimile: (619) 354-7281

*Attorneys for Plaintiff,*
Kyle Miholich

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE MIHOLICH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CRAIG TANN LTD. D.B.A HUNTINGTON AND ELLIS, A REAL ESTATE AGENCY,<br><br>Defendants. | Case No.: **'24CV2295 AJB  VET**<br><br><u>**CLASS ACTION COMPLAINT**</u><br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C §§ 227, *ET SEQ.***<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

**INTRODUCTION**

1.    Plaintiff Kyle Miholich ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit for damages resulting from the unlawful actions of Craig Tann Ltd. d.b.a Huntington and Ellis, A Real Estate Agency ("Defendant", or Huntington & Ellis").  Defendant negligently, knowingly, and/or willfully placed unsolicited text messages to Plaintiff and the putative class on their respective cellular phone numbers which are registered with the National Do-Not Call Registry in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and related regulations, including but not limited to 47 C.F.R. § 64.1200(c) and/or 47 C.F.R. § 64.1200(d).  Plaintiff seeks relief for all persons injured by Defendant's unlawful conduct in the form of statutory damages and injunctive relief.

2.    Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

3.    This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4.    Defendant sent unsolicited text messages to Plaintiff's cellular telephone on multiple occasions, which was registered with the National Do-Not Call Registry.

5.    Defendant has violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) by bombarding consumers' mobile phones registered with the National Do-Not Call Registry with non-emergency advertising and marketing text messages without prior express written consent.

6.    The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

7.    In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring (a) Defendant to cease all unsolicited voice phone calls and text messages to numbers on the National Do-Not Call Registry as well as an award of statutory damages

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

to the members of the Class (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## JURISDICTION AND VENUE

8.   This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

9.   This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) ("Class Action Fairness Act" or "CAFA") because Plaintiff and the members of the Class have suffered aggregate damages exceeding $5,000,000, exclusive of interests and costs, and this case is a class action in which members of the Class are citizens of a state different from Defendants.

10.   The Court has personal jurisdiction over Defendant because Defendant's unlawful conduct alleged in this Complaint occurred in, was directed to this District.

11.   Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in the County of San Diego, State of California as Plaintiff resides within the State of California, County of San Diego and received the subject text messages in San Diego, California.

## PARTIES

12.   Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California, County of San Diego. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

13.   Defendant is a corporation formed under the laws of Nevada with its principal place of business in Las Vegas, Nevada. Defendant is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

14.   Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of San Diego, and within this

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  judicial district.

2      15.    Whenever in this Complaint it is alleged that Defendant committed any

3  act or omission, it is meant that the Defendant's officers, directors, vice-principals,

4  agents, servants, or employees committed such act or omission and that at the time such

5  act or omission was committed, it was done with the full authorization, ratification or

6  approval of Defendant or was done in the routine normal course and scope of

7  employment of the Defendant's officers, directors, vice-principals, agents, servants, or

8  employees.

9

10                    **TCPA BACKGROUND**

11      16.    In 1991, Congress enacted the TCPA to regulate the explosive growth of

12  the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted

13  telemarketing … can be an intrusive invasion of privacy.…"  Telephone Consumer

14  Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. §

15  227).

16      17.    The TCPA was designed to prevent calls and messages like the one

17  described within this complaint, and to protect the privacy of citizens like Plaintiff.

18  "Voluminous consumer complaints about abuses of telephone technology – for

19  example, computerized calls dispatched to private homes – prompted Congress to pass

20  the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

21      18.    Specifically,  the  TCPA  restricts  telephone  solicitations  (*i.e.,*

22  telemarketing) and the use of automated telephone equipment, as well as violations of

23  the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1]  The TCPA

24  limits the use of automatic dialing systems, artificial or prerecorded voice messages,

25

26  _____

27  [1]  According  to  the  Federal  Communications  Commission's  website,
    https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list,

28  accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always
    has been - illegal in most cases.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

19.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

20.    Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). *See also FCC Declaratory Ruling 23-107* (Dec 13, 2023) (clarifying that text messages are protected just as voice calls under 47 U.S. Code § 227(c) "We adopt our proposal to codify the National DNC Registry's existing protections to text messages", and further commenting "it would be anomalous to conclude that text messages to wireless numbers are "calls" for one part of the Commission's TCPA rules but not for the DNC protections".) *FCC 23-107 (3)(B).*

21.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party …"

22.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes

- 5 -

the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

23.   As of October 16, 2013, unless the recipient has given *prior express written consent*,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA prohibit certain calls to members of the National Do-Not Call Registry. *See* 47 U.S.C. §227(c)(5).

24.   Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."   *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

25.   The TCPA also provides that liability should be imposed when calls are made on behalf of an entity or person. 47 U.S.C. § 227(c)(5). In its implementing regulations and interpretations, the FCC has determined that this statutory mandate is broad, and that vicarious liability applies where there is apparent authority, actual authority, ratification, or, under the express terms of § 227(c), when unlawful calls are placed "on behalf of" the seller. *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013).

26.   Accordingly, the entity can be liable under the TCPA for a call made on

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

1  its behalf, even if the entity did not directly place the call.  Under those circumstances,
2  the entity is deemed to have initiated the call through the person or entity.

3      27.  With respect to misdialed or wrong-number calls, the FCC recently
4  clarified that "callers who make calls without knowledge of reassignment and with a
5  reasonable basis to believe that they have valid consent to make the call should be able
6  to initiate one call after reassignment as an additional opportunity to gain actual or
7  constructive knowledge of the reassignment and cease future calls to the new
8  subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer*
9  *Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).  "If this
10 one additional call does not yield actual knowledge of reassignment, we deem the caller
11 to have constructive knowledge of such." *Id.*  Thus, any second call placed to a wrong
12 number violates the TCPA.

13     28.  The TCPA provides for damages in the amount of $500 for each negligent
14 violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(c)(5).

15

16 **FACTUAL BACKGROUND**

17     29.  Defendant operates a prominent real estate brokerage based in Las Vegas,
18 Nevada.

19     30.  As of December 8, 2024, Defendant represents that 138 agents ("Huntington
20 & Ellis Agents", or "Agents") are employed as real estate agents by Defendant, including
21 Chris Patrick.[3]

22     31.  Defendant allows each of its Agents to have a designated webpage that lists
23 the Agent's contact information, short biography, and the homes for which they
24 represent Defendant.  People interested in buying and selling homes can find one of these
25 Agents by searching Defendant's website to help them do so. When a home is sold, the

26

27

28

---

[3] https://huntingtonandellis.com/team (last accessed December 8th, 2024).

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

payment is purportedly received by Defendant; Defendant then pays the Agent a commission while Defendant also receive a portion of the profit.

32.    To become a Huntington & Ellis Agent and be able to help people buy and sell homes through the Huntington & Ellis brand, a person must first apply and be accepted for such a role/employment by Defendant.  In other words, individuals cannot just simply decide to hold themselves out as being a Huntington & Ellis representative; instead, every Huntington & Ellis Agent has received an affirmative authorization from Defendant, to hold themselves out as such.

33.    The Huntington & Ellis Agents do not operate independently. Rather, each one is run in accordance with the Defendant's policies and procedures to ensure continuity in customer service, and to protect the reputation of the Huntington & Ellis brand, which, in turn, ensures more profits for Defendant.

34.    Defendant, through its real estate agents contracts with buyers and sellers of residential and commercial real estate properties, earning transactional commissions from the sale and/or purchase of these properties.

35.    One way the Agents drive home sales for Defendant is to "cold call" or "cold text" residential and cellular telephone numbers directly to market their real estate services.

36.    Defendant knows that it is standard practice in the real estate field to use cold calling, cold texting, and telephone solicitation to generate new business, and Defendant knows and expect that its Agents will employ these strategies when selling real estate on its behalf.

37.    As is typical to the industry and known to Defendant, Huntington & Ellis Agents often scan real estate listings that are from competitors, are for sale by owner ("FSBO"), or are expired to identify individuals who might be in the market for a new real estate agent, and they cold call and/or cold text these homeowners to try to convince them to retain the Agent to list the property.

38.     Huntington & Ellis Agents also prospect for potential home buyers or sellers by cold calling or cold texting homeowners or renters in targeted geographic areas, including in the vicinity of existing listings, open houses, or recent sales. Defendant provides training on and gives its Agents access to various lead generation services which allow its Agents to download residents' contact information, including phone numbers, to make such geo-targeted cold calls and texts.

39.     Defendant not only authorizes and ratifies the Agents' practice of cold calling or cold texting residential and cellular telephone numbers directly to market Defendant's real estate services, they also welcome the financial benefits of the increased home sales that the cold calls and texts generate.

40.     In its zeal to find clients and get more commissions, Defendant has failed to take sufficient precautions to ensure its Agents do not engage in harassing telephone practices.

41.     In particular, Defendant has failed to adopt sufficient procedures to ensure its Agents do not call potential customers who are not on the National Do Not Call Registry ("NDNCR"). This practice violates the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations.

42.     Defendant does not vet lists provided to and used by Huntington & Ellis Agents to dial by comparing them to the NDNCR.

43.     Defendant has not taken adequate steps to prevent Huntington & Ellis Agents from calling people on the NDNCR. Defendant has not adopted sufficient written procedures, training programs, or a process that they know will actually prevent Huntington & Ellis Agents from calling numbers on the NDNCR.

44.     Defendant's written procedures are inadequate and do not comply with 47 U.S.C. § 64.1200(c)(2)(i)(A).

45.     Defendant's training is inadequate and does not comply with 47 U.S.C. § 64.1200(c)(2)(i)(B).

46.    Defendant does not maintain and record a list of telephone numbers that their Agents may not contact pursuant to 47 U.S.C. § 64.1200(c)(2)(i)(C).

47.    Defendant does not use any process to prevent telephone solicitations of any number on the NDNCR and does not maintain records documenting its process pursuant to 47 U.S.C. § 64.1200(c)(2)(i)(D), or to the extent it attempts to use such processes, they remain out of compliance with NDNCR regulations.

48.    In Defendant's overzealous attempt to market its services, Defendant, through its Agents, willfully or knowingly sent (and continues to send) (a) unsolicited and automated telemarketing text messages and calls to persons who have registered their cellular telephone number on the National Do-Not Call Registry.

49.    Through this conduct, Defendant has invaded the privacy of Plaintiff and the members of the Class.

50.    At all times relevant, Plaintiff was a citizen of the State of California. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

51.    Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153(39).

52.    At all times relevant Defendant conducted business in the State of California and in the County of San Diego, within this judicial district including sending the subject text messages to Plaintiff, who lives in San Diego, California.

53.    At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in "5823" ("Cell Phone").

54.    Plaintiff is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

55.    Plaintiff's Cell Phone is assigned to him as his personal cellular telephone and Plaintiff uses his Cell Phone for personal reasons including calling family and friends.

56.    Plaintiff's Cell Phone was added to the National Do-Not-Call Registry on

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  or about October 27, 2006.

2      57.    Defendant, through its Agent Chris Patrick, sent seven (7) telemarketing

3  text messages to Plaintiff on his cellular telephone,[4] between approximately October

4  29, 2024, and November 20, 2024. These text messages were sent from telephone

5  number "(725) 710-9500," which is operated by Chris Patrick, an Agent of the

6  Defendant.

7      58.    Plaintiff uses his cell phone number for personal use only - and did so at

8  the time he was sent text messages by Chris Patrick.

9      59.    On or about October 29, 2024, at approximately 1:30 p.m., Defendant sent

10  a text message to Plaintiff's Cell Phone from the telephone number "(725) 710-9500"

11  which said:

12          "Hey, this is Chris, a local Las Vegas realtor. Since 2013 I've

13          helped over 300 families sell their homes and I'd love to help

14          you too.

15          No low ball offers and no investors. I connect sellers with the

16          highest paying buyers in today's market.

17          Can I send you more info?

18          https://mcsms.io/7VvZXI"

19

20      60.    On or about October 31, 2024, at approximately 1:04 p.m., Defendant sent

21  a text message to Plaintiff's Cell from the telephone number "(725) 710-9500" which

22  said:

23          "Hey! Chris here. I'm like a Matchmaker for homes and

24          high-paying buyers! Check out this quick video to see how I

25

26  _____

27  [4] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list,

28  accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

KAZEROUNI LAW GROUP, APC

make the magic happen:

https://mcsms.io/A8Gybq"

61.     On or about November 1, 2024, at approximately 2:13 p.m., Defendant sent a text message to Plaintiff's Cell from the telephone number "(725) 710-9500" which said:

> "Hey! If you're thinking about listing your home again, I can
> help you get it sold this time (and get the highest price).
> Can we chat?
> https://mcsms.io/GoSIZ-"

62.     On or about November 11, 2024, at approximately 1:01 p.m., Defendant sent a text message to Plaintiff's Cell from the telephone number "(725) 710-9500" which said:

> "If you're ready to re-list your home I'll cover all marketing
> costs and I only get paid 2.5% when it sells. Can we chat?
> -Chris
> https://mcsms.io/WIfCPu"

63.     On or about November 13, 2024, at approximately 11:01 a.m., Defendant sent a text message to Plaintiff's Cell from the the telephone number "(725) 710-9500" which said:

> "Hi! It's Chris, a local LV realtor. The economy is
> improving, buyers are active, and now's a great time to sell.
> If you listed again, what price would you want?"

64.     On or about November 19, 2024, at approximately 2:01 p.m., Defendant sent a text message to Plaintiff's Cell from the telephone number "(725) 710-9500"

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

which said:

> "Hey, this is Chris with H&E. I saw your home came off the market, what happened? If you're still thinking of selling, I can help you get it sold. Can we chat?"

65.    On or about November 20, 2024, at approximately 12:36 p.m., Defendant sent a text message to Plaintiff's Cell from the telephone number "(725) 710-9500" which said:

> "Hey, it's Chris! If I could help you get your home sold in the next 30 days (and for the price YOU want) would that be worth a 5 min phone call? Let me know!"

66.    Each of the links included in the first four text messages sent by Defendant to Plaintiff led to the webpage "www.chrispatrickrealestate.com", which prominently displays the title "Chris Patrick – Huntington & Ellis", as well as Defendant's trademarked "HE" logo.

67.    Such text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services. Specifically, all seven text messages were sent on behalf of Defendant and were intended to solicit and secure the sales listing for Mr. Miholich's home.

68.    Plaintiff received at least seven telephone solicitations from Defendant within a 12-month period.

69.    The text messages were impersonal and did not reference Mr. Miholich by name, suggesting the text messages were sent *en masse* via a text autodialer platform from a stored list of phone numbers.

70.    Plaintiff did not provide Defendant with his cellular telephone number at any point in time, nor did he give permission for Defendant to message it.

71.    Plaintiff did not have an established business relationship with Defendant

during the time of the telephone solicitations from Defendant.

72.    Plaintiff did not have a personal relationship with Defendant at any point in time.

73.    Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to message Plaintiff's cellular telephone for marketing or solicitation purposes.

74.    Defendant sent at minimum of seven (7) unsolicited text messages to Plaintiff to his Cell Phone which was registered with the National Do-Not Call Registry, for at least 31 days prior to these unsolicited text messages, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

75.    Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

76.    Defendant did not place the text messages for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

Upon information and belief, Defendant did not make the telephone solicitations in error.

## **ARTICLE III STANDING**

77.    Defendant sent multiple text message to Plaintiff's personal cellular telephone which was registered on the National Do-Not-Call Registry. Such unwanted text messages from Defendant are a nuisance, an invasion of privacy, and wasted Plaintiff's time and enjoyment in use of his personal cellular telephone. All three of these injuries are concrete and *de facto*.

78.    Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time opening and read each text message.

79.    All of these injuries are particularized and specific to Plaintiff, and will be the same or substantially similar injuries suffered by each member of the putative class.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

KAZEROUNI LAW GROUP, APC

80.    The above text messages were linked to Defendant as they were sent on behalf of both Defendant and their employed Agent Mr. Patrick, who are the parties that attempted to solicit business from Plaintiff for their financial benefit.  These text messages are the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendant.

81.    Plaintiff's Request for Relief includes a request for damages for each text message and telephone call made by or on behalf of Defendant to cellular numbers on the National Do-Not Call Registry, as authorized by statute in 47 U.S.C. § 227, *et seq*. The statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

## CLASS ACTION ALLEGATIONS

82.    Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following classes, of which Plaintiff is a member, which are defined is follows:

**National Do-Not Call Class**:
All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 30 days, (2) who received more than one call or text message (3) made or sent by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

83.    Excluded from the Classes are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

84.    Plaintiff reserves the right to redefine the classes and to add subclasses as appropriate based on discovery and specific theories of liability.

85.    Plaintiff and members of the Classes were harmed by the acts of

KAZEROUNI
LAW GROUP, APC

Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the National Do-Not-Call Registry.  Plaintiff and the Class members were damaged thereby.

86.    Numerosity: Upon information and belief, the members of the classes are so numerous that joinder of all of them is impracticable.

87.    The exact number of the members of the classes is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of class members during the class period, it is reasonable to presume that the members of the Classes are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

88.    Ascertainability: The members of the classes are ascertainable because the classes are defined by reference to objective criteria.

89.    In addition, the members of the classes are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

90.    Typicality: As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Classes.  Plaintiff will fairly and adequately represent and protect the interests of the Classes in that Plaintiff has no interests antagonistic to any member of either Class.

91.    Plaintiff's claims are typical of the claims of the members of the classes. Plaintiff has had to suffer the burden of receiving unwanted text messages to his cellular

telephone, despite his phone number having been registered on the National Do-Not Call Registry. Thus, his injuries are typical to Class Members.

92.    Plaintiff's claims, and the claims of the members of the classes, originate from the same conduct, practice and procedure on the part of Defendant.

93.    Plaintiff's claims are based on the same theories, as are the claims of the members of the classes.

94.    <u>Adequacy</u>: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the classes with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

95.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

96.    Plaintiff will vigorously pursue the claims of the members of the classes.

97.    Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

98.    Plaintiff's counsel will vigorously pursue this matter.

99.    Plaintiff's counsel will assert, protect and otherwise represent the members of the classes.

100.    Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

101.    <u>Predominance</u>: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable

KAZEROUNI
LAW GROUP, APC

of proof at trial through evidence that is common to the Class rather than individual to its members.

102.  <u>Commonality</u>: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

    a.  What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

    b.  Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent more than one text message to the members of the Class whose telephone numbers were on the National Do-Not-Call Registry and who had neither an established business relationship nor personal relationship with Defendant;

    c.  Whether Defendant obtained prior express written consent to send the text messages to Plaintiff or the Class members' telephones;

    d.  Whether Defendant's conduct violated the TCPA, and availability of statutory penalties;

    e.  Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

    f.  Whether Defendant should be enjoined from engaging in such conduct in the future.

103.  <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

- The pursuit of separate actions by individual members of the class could

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

KAZEROUNI
LAW GROUP, APC

create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

- There will be little difficulty in the management of this action as a class action.

104. Defendant has acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate.

105. Plaintiff and the members of the Classes have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

106. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply

with federal law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

107.  Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

108.  This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I
### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### REGARDING THE NATIONAL DO-NOT CALL REGISTRY
### 47 U.S.C. § 227(C) AND 47 C.F.R. § 64.1200(C)

109.  Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

110.  Plaintiff and members of the National DNC Class received more than one marketing text message or phone call within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

111.  At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

112.  Defendant sent unsolicited and unauthorized text messages and phone calls to the cellular telephones of Plaintiff and the Class members, cellular telephones which were registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

113.   Defendant knew that it did not have prior express written consent to send these text messages and/or phone calls, and knew or should have known that it was sending text messages or making calls to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

114.   Defendant willfully or knowingly allowed text messages and/or phone calls to be sent to Plaintiff's and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages and calls.

115.   Defendant's text messages and calls caused Plaintiff and members of the National DNC Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

116.   Because Defendant knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were on the National Do-Not Call Registry, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to the TCPA.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2)

117.   As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

118.   Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

119.   Plaintiff also seeks an award of attorneys' fees and costs on behalf of

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1 | Plaintiff and the Class.

2

3 | **PRAYER FOR RELIEF**

4 | **WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully

5 | requests the following relief:

6 | • An order certifying this matter as a class action with Plaintiff as Class
7 | Representative, and designating Plaintiff's counsel as Class Counsel.

8 | • Injunctive relief prohibiting Defendant from engaging in such conduct in the
9 | future pursuant to 47 U.S.C. § 227(c)(5)(A);

10 | • Statutory damages of $500.00 for Plaintiff and each member the Class for
11 | each and every one of Defendant's negligent violations of 47 U.S.C. §§ 227,
12 | *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(B);

13 | • Statutory damages of $1,500.00 for Plaintiff and each member the Class for
14 | each and every one of Defendant's knowing or willful violations of 47
15 | U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(C);

16 | • Costs of suit;

17 | • An award of attorneys' fees, pursuant to, *inter alia*, the common fund
18 | doctrine;

19 | • Pre-judgment and post-judgment interest on monetary relief; and

20 | • All other and further relief as the Court deems necessary, just, and proper.

21

22 | **DEMAND FOR JURY TRIAL**

23 | Plaintiff, individually and on behalf of the Class, demands a jury trial on all

24 | issues so triable.

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Dated: December 10, 2024   Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/Ryan L. McBride
Ryan L. McBride, Esq.
ryan@kazlg.com
*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF